| | | |
|---|---|---|
| **BELLEW LLC** | Red Clay Center at Little Falls<br>2961 Centerville Road, Suite 302<br>Wilmington, DE  19808 | Sean J. Bellew, Esq.<br>Tel: (610) 585-5900<br>Email:  sjbellew@bellewllc.com |

February 14, 2024

Hon. Sherry R. Fallon
United States Magistrate Judge
J. Caleb Boggs Federal Building
844 N. King Street Unit 14
Room 6100
Wilmington, DE 19801-3555

Re: *Durr Systems, Inc. v. Nevoa Life Science Holdings, Inc.,* 1:23-cv-00529-JLH

Your Honor,

      Please accept this letter brief in support of Defendant/Counterclaim Plaintiff Nevoa Life Science Holdings, Inc.'s Motion to Resolve Discovery Disputes (D.I. 53), filed on February 8, 2024, which Your Honor set for hearing on February 21, 2024, at 2:00 pm (D.I. 56). This motion, along with Nevoa's Motion for the Issuance of Letters of Request (D.I. 50), have been referred to Your Honor for disposition.

      Nevoa respectfully requests that this Court enter an order (1) compelling Durr to produce two current employees of Durr's parent company, non-party Durr AG, to sit for depositions at a mutually agreed time and location,[1] and (2) permitting Nevoa to recall Durr's 30(b)(6) witness, Rick Ostin, to answer questions regarding Ostin's recent conversations with Mr. Friedrich regarding key issues in this case. A Proposed Order is attached as Exhibit A to this letter.

Background and Issues in Dispute

      This dispute stems from Durr's breach of two contracts between the parties: (1) the Mutual Confidentiality Agreement or "NDA" (*see* D.I. 17, Ex. A) and (2) the parties' Development and Exclusive Manufacturing Agreement or "Agreement". (*see* D.I. 1, Compl., Ex. 1). Durr Systems, Inc. agreed to serve as a contract manufacturer for Nevoa's patented Nimbus™ system, a whole room disinfectant fogging machine for use in healthcare settings. *Id.* Among other obligations, the Agreement required Durr to incorporate its spinning disc technology in the machines, which Durr had previously developed and used in the automotive paint industry, and adhere to Nevoa's design specifications for the machines.

---

[1] In the alternative, Nevoa requests that the Court grant its motion (D.I. 51) to issue Letters of Request for International Judicial Assistance pursuant to the Hague Convention to obtain testimony and documents from these witnesses.

Durr's parent company, Durr AG, manufactured the Nimbus™ machines in Germany and engaged several subcontractors to supply machine parts. To cement their collaboration, Durr, Durr AG, and Nevoa executives met in Germany in Fall 2019. At that meeting, Durr erroneously claimed, for the first time, that *Durr* held intellectual property rights in the Nimbus™ machine.

As detailed in Nevoa's counterclaim, shortly after this meeting in Germany took place, Durr filed a patent application that incorporated key portions of Nevoa's confidential information in violation of the NDA.

Though Nevoa ordered and paid for 55 Nimbus™ machines, not a single one of them operated as expected. One of the most significant issues involved the life span of the turbine that powered Durr's spinning disc disinfectant sprayer. Time and again, Nevoa received reports from the field that its turbines were failing. Ultimately, Durr's inability to produce a product that operated as intended cost Nevoa business during COVID. After efforts to resolve the parties' dispute failed, Durr terminated the contract and filed this lawsuit. The parties propounded written discovery and took several depositions and are now at an impasse on three issues, prompting Nevoa's Request for Teleconference. The Court ordered briefing on two of the three issues. [2]

I. <u>Durr's Improper Objections to the Properly Noticed Depositions of Critical Durr AG Employees.</u>

On January 11, 2024, Nevoa served Notices of Deposition seeking testimony from Lars Friedrich and Patrick Haeussermann, two current employees of Durr AG who possess knowledge about the problems the parties experienced with the Nimbus machines and about conversations that took place in Germany with Durr AG executives present about the Nevoa's intellectual property. Durr objected and refused to produce these witnesses, claiming that the Notices seek to take a non-party deposition without proper service of the subpoena under Rule 45. (See Ex. B). This is improper.

Counsel's refusal to produce these witnesses is grounded on technical corporate formalities rather than the realities of the relationship between Durr and its parent corporation as it relates to Durr's obligations under the Agreement. The question of whether a foreign witness of an affiliate company can be compelled to appear for deposition under the Federal Rules turns on the degree of control the party has over the non-party related entity and the importance of the information sought from that entity. *See, e.g., Ethypharm S.A. France v. Abbott Labs*, 271 F.R.D. 82 (D. Del. 2010). Corporate formalities should not control here. In questioning Durr's 30(b)(6) designee, Rick Ostin, Nevoa learned that Durr has sufficient control over the witnesses even though they work for Durr AG, the parent company. In fact, Ostin testified that Durr's attorneys met with Dr. Friedrich and Mr. Ostin not even *three weeks ago* in Michigan, in preparation for Ostin to testify on Durr's behalf about this case. Though Durr's counsel inappropriately instructed the witness

---

[2] The third issue Nevoa raised concerned Durr's refusal to answer Nevoa's interrogatories on the grounds that they were untimely served. Nevoa sought court intervention only after Durr refused to agree to a short extension of the time to respond, even though Durr waited to make its initial document production until late December 2023. This Court denied the request for teleconference on this issue without prejudice, and Nevoa reserves its right to renew the motion at a later time.

not to answer questions about the conversation, Ex. C, Ostin Dep. at 107-110, the *very fact* that the conversation occurred proves that counsel has sufficient control over these individuals. For this reason, counsel for Nevoa contacted both witnesses to ask that they appear voluntarily. (Email from S. Bellew, Esq. dated Feb. 1, 2024, attached at Ex. D.)  Neither has responded.

Moreover, Ostin testified that these witnesses have information on several critical issues, including Durr AG's role in fulfilling Durr's contract manufacturing obligations under the Agreement, Durr AG's improper filing of the patent application and disclosure of Nevoa's confidential information, the problems Nevoa experienced with the turbines and attempted repairs, and Durr AG's subcontract with Fischer, the manufacturer of the defective turbines. (Ex. C, Ostin Dep. at 48-50; 61-63; 102-105.) This information is directly relevant to Nevoa's claim that it was *Durr* who breached the contracts -- specifically Sections 1.13 and 3.4, (D.I. 1, Compl., Ex. 1), which required Durr to manufacture machines according to the agreed upon specifications. Also, during the deposition of Ernest Cunningham, Nevoa's Chief Operating Officer, Durr's counsel questioned Cunnigham about a document Dr. Friedrich sent to Nevoa. (Email from L. Friedrich dated Apr. 8, 2020, attached as Ex. E.) Durr's interest in Friedrich's email is a clear concession that he possesses relevant knowledge to this case.

At breaks during three separate depositions, Nevoa and Durr met and conferred on this issue but have reached an impasse.  As a result, Durr filed its Motion for Issuance of Letters of Request (D.I. 51), which Durr also indicated it will oppose (D.I. 52), in an obvious attempt to foreclose every possible avenue Nevoa has for obtaining this critical evidence.

    II.    <u>Issue 2: Durr's Refusal to Answer Certain Questions Based on Attorney-Client Privilege Was Improper.</u>

During Ostin's 30(b)(6) deposition, Ostin admitted that he spoke with Lars Friedrich about the subject matter of this litigation no less than three weeks prior to his deposition. (Ex. C., Ostin Dep. at 106-112) Durr's counsel instructed Ostin not to answer any questions about this meeting or his firm's representation of Durr AG, asserting attorney-client privilege. (*Id.* at 235-236) This instruction was improper.

Given that Durr's counsels' position throughout this litigation has been that they do not represent Durr AG or its employees in this Delaware lawsuit, counsel for Nevoa insisted that the witness answer questions about the meeting with a non-party. Logic dictates that if opposing counsel does not represent Durr AG, then this necessarily means that this conversation between counsel, Ostin, and a third-party, is not protected by disclosure by the attorney client privilege because the privilege is broken. *See In re Chevron Corp.*, 650 F.3d 276 (3d Cir. 2011) (concluding that attorney-client privilege did not attach to attorney's comments made in presence of third parties because those comments were not made "in confidence" – an essential element the proponent of the privilege must show); *see also In re Teleglobe Comms. Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) ("[I]f persons other than the client, its attorney, or their agents are present, the communication is not made in confidence, and the privilege does not attach.").

Counsel for Durr cannot have it both ways: Durr cannot assert, on the one hand, that their firm does not represent Durr AG or have any control over Durr AG's employees, while claiming

that Ostin's conversation with Dr. Friedrich of Durr AG is a privileged communication. It is axiomatic that the party asserting the privilege has the burden of establishing it protects communications – a standard that Durr cannot satisfy on these facts. Counsel for both parties addressed this issue during the deposition and reached an impasse. (Ex. C, 106-112).

 Thus, Nevoa seeks an order compelling Durr to permit Nevoa to recall Ostin to answer questions about the circumstances surrounding, and the substance of, his conversation with Dr. Friedrich before he sat for the 30(b)(6) deposition.

                 Sincerely,

                  Sean J. Bellew (4072)

cc: Counsel of Record VIA ECF